In the Matter of the PATERNITY OF J.N., L.N., M.N. and M.N.

John R. NIEMAN, Appellant (Respondent Below),

v.

Anne M. NIEMAN, as Mother and Natural Guardian of J., L., M. and M.N., Appellee (Petitioner Below).

No. 64A04–9406–JV–251.

Court of Appeals of Indiana, Fourth District.

Nov. 29, 1994.

R. Bradley Koeppen, Valparaiso, for appellant.

Pamela Carter, Atty. Gen., Jon Laramore, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

John Nieman presents this interlocutory appeal of the trial court's ruling that Indiana has jurisdiction to adjudicate the paternity of children he is alleged to have fathered and to accordingly establish his child support obligation. We affirm.

### ISSUE

Whether because the putative father may be reached by Florida's long-arm statute, federal regulations give Florida exclusive jurisdiction to adjudicate his paternity and his support obligations?

### FACTS

Anne and John Nieman were married in April 1975 in the State of Illinois. They were divorced in Illinois on March 16, 1978, with the decree acknowledging a son born October 24, 1975, to be a child of the marriage and that Anne was pregnant at the time of the dissolution. That pregnancy resulted in the birth of a daughter, born May 1, 1978.

Anne and John continued to cohabit. Anne gave birth to a daughter on May 21, 1979 and to a son on September 12, 1990. In January, 1991, Anne and John moved to Florida. John lived in Florida with Anne and the children briefly.[1] He then relocated to Indiana, where he continues to reside.

After John left, Anne applied for public assistance for her children in Florida. Consistent with federal requirements for state program administration of Aid to Families with Dependent Children benefits, Anne acted to establish John's paternity and child support responsibilities. She filed a petition in Florida pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA).[2] Florida, as initiating state, forwarded to Indiana the URESA action. The deputy prosecuting attorney of the county of John's residence proceeded on behalf of Indiana, the responding state.[3] Communication exchanged between the deputy prosecutor and John's counsel included research regarding Indiana and Florida law and federal guidelines of the IV–D Child Support Program.

At the April 22, 1994, pre-trial conference, John's counsel advised the court that "the State of Florida, pursuant to its long-arm statute and the Code of Federal Regulations, had exclusive jurisdiction to hear and determine the petition to establish paternity." R. at 46. The parties then submitted memoranda of law for the court's consideration.

On May 19, 1994, the trial court ruled that the Indiana court had jurisdiction to proceed with the URESA action.

### DISCUSSION AND DECISION

Congress created the Child Support Enforcement program

"in response to the alarming rise in welfare costs resulting from increasing nonmarital birth rates and parental desertion of families, and to the growing demand on the Congress to relieve taxpayers of the financial burden of supporting these families. Since enactment of title IV–D of the Social Security Act in January 1975, States have been required to cooperate with one another in ... establishing paternity and obtaining and enforcing support owed by absent parents to their children."

53 Fed.Reg. 5246 (1988) (background supplementary information).

According to the current regulations at 45 C.F.R. § 303.7(b), the initiating state's IV–D agency

---

1. The deputy prosecuting attorney's memorandum to the trial court states John "deserted his family approximately 2 weeks after the move," R. at 7; John's memorandum states he "lived in Florida, with [Anne] and their four children" for approximately two months. R. at 30.

2. Florida's statute is found at Fla.Stat.Ann. ch. 88.

3. Indiana's statute is found at Ind.Code 31–2–1.

"must . . . if the State has a long-arm statute which allows paternity establishment, use the authority to establish paternity whenever appropriate."

*Id.*

John argues that the following Florida long-arm statute subjects him to the jurisdiction of the Florida courts.

"1. Any person, whether or not a citizen or resident of this state who personally . . . does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(e) . . . with respect to an independent action for support of dependents, . . . if the defendant resided in this state preceding the commencement of this action, whether cohabiting during that time, or not."

Fla.Stat.Ann. ch. 48.193 (West 1994). Thus, he argues, to comply with the federal regulation, Florida " 'must' use its long-arm statute to establish paternity." Appellant's reply brief at 2.

John's focus on the use of the word "must" totally ignores the regulation's concluding phrase "whenever appropriate." 45 C.F.R. § 303.7(b). As the State correctly observes, the "whenever appropriate" language grants Florida the discretion to decide when to use its long-arm statute and when to proceed with another enforcement method. The Department of Health and Human Services, Office of Child Support Enforcement, explained in the Federal Register commentary that the regulation allowed for

"situations when use of a long-arm statute to establish paternity would not be appropriate, e.g., if the basis for jurisdiction is questionable or witnesses are available to testify in the responding State. In these cases, another remedy, such as the URESA process, may be more effective. A requirement that States with statutory authority use long-arm jurisdiction in paternity establishment whenever appropriate will ensure that States examine all avail-

able options in each case and choose the most effective one."

53 Fed.Reg. 5251–52.

The controlling regulation, 45 C.F.R. § 303.7(b), directs a state seeking support enforcement to use its long-arm statute "whenever appropriate." The federal agency's explanation of that direction specifically refers to URESA as "another remedy" which might be found "appropriate" in certain circumstances. 53 Fed.Reg. 5251–52. Hence, the federal government allows Florida to exercise discretion as to whether to proceed under its long-arm statute or URESA. Florida has exercised that authorized discretion and asked Indiana to proceed as responding state. "Indiana law imposes upon a parent the duty to support his children." *State v. Taylor* (1993), Ind.App., 625 N.E.2d 1334, 1335 (citing *Crowe v. Crowe* (1965), 247 Ind. 51, 54, 211 N.E.2d 164, 166). The Indiana enforcement support statute includes the purpose of "determin[ing] . . . paternity, if necessary, in order to establish and enforce a duty of support" and grants the Indiana circuit courts jurisdiction of all proceedings therefor. Ind.Code 31–2–1–1 and –10.

We affirm the trial court's order confirming jurisdiction to proceed with Anne's petition.

RILEY and BARTEAU, JJ., concur.